# Pole Attachment License Agreement

THIS AGREEMENT, effective as of **(10-24-12)**, is made by and between **Mississippi Power Company**, ("Licensor"), and **Bailey Cable TV, Inc.** ("Licensee")

WHEREAS, Licensee proposes to install fiber optic cable for the purpose of communications, and Licensee desires to attach or install its cables, wires, and appliances to certain facilities of Licensor in the counties of: **Forrest, Newton, Scott and Smith** in Mississippi.

and

WHEREAS, Licensor is required under Section 703 of the Telecommunications Act of 1996 ("1996 Act") to provide mandatory access to certain of its facilities to telecommunications carriers and cable television systems; and

WHEREAS, to fulfill its obligations under Section 703, Licensor hereby permits, to the extent required by law and consistent with its mortgage indenture, Attachments to its facilities if, in its judgment, such use will not interfere with its own service requirements, including consideration of safety, reliability, insufficient capacity and generally applicable engineering concerns, and if Licensor is protected and indemnified against all cost and liabilities arising out of such use.

NOW, THEREFORE, in consideration of the premises and the mutual covenants, terms and conditions herein contained, the parties do hereby agree as follows:

Exhibit "A"

## Article 1 -  Definitions

For the purpose of this Agreement, the following terms when used herein shall have the following meanings:

**a.**     **Authorized Attachments:** are Attachments to Licensor's Facilities that have been approved in writing by Licensor.

**b.**     **Attachment:** is any wire, cable, line, conductor, guy, equipment, appliance, material or any other facility that is placed on, attached to or connected to Licensor's Facilities; provided, however, Licensee shall not attach any antennas or wireless communication equipment to Licensor's Facilities.

**c.**     **Changing the Character of Service:** occurs whenever Licensee causes a change in the physical characteristics of an Attachment, examples of which include but are not limited to Overlashing or increasing the number of Attachments to a Facility; or when there is a change in or expansion of the service territory of Licensee.

**d.**     **Conduit:** is an underground facility of the Licensor where Licensee may request occupancy.

**e.**     **Effective Date:** is the date stated on the cover of and in the first paragraph of this Agreement.

**f.**     **Joint User:** is AT&T Mississippi, with which Licensor has an agreement for the joint use of the utility poles.

**g.**     **NESC:** means the National Electrical Safety Code as it may be amended from time to time.

**h.**     **OSHA:** means all applicable requirements of the Occupational Safety and Health Act of 1970 ("1970 Act"), as it may be amended, and rules, regulations, or orders now in effect or that may hereafter be issued pursuant to that Act.

**i.**     **Occupancy:** is the use of or specifically reserving space for the Attachments to any of Licensor's facilities.

**j.**     **Licensor's Facilities, Facilities or Facility:** are the poles, conduits, or facilities owned or controlled by Licensor upon, on or in

4

which are to be provided space for the Attachments of both parties under this   Agreement.

**k.**  **Rearranging, Rearrange or Rearrangement of Attachments:** is the moving of an Attachment or Attachments from one position to another on Licensor's Facilities.

**l.**  **Transferring or Transfer of Attachments:** is the removing of Attachments from one pole, conduit, or facility and placing them upon another.

**m.**  **Overlashing:** is the attachment by winding, securing, fastening, lashing, threading or looping of one cable onto another cable.

**n.**  **Tagging:** is the identification of Licensee's Attachments at each point of attachment to Licensor's Facilities.  The identification must be readable from ground level with the naked eye and acceptable to Licensor.

**o.**  **Unauthorized Attachment:** is any material or apparatus now or hereafter attached to Licensor's Facility by Licensee, including without limitation, Overlashing, which Attachment has not been approved in writing by Licensor or which is not in compliance with the terms and conditions of this Agreement.  Such Unauthorized Attachments shall include but not be limited to Overlashing or a Change of Character of Service if not approved in advance by Licensor in writing.

**p.**  **Overdue Transfer:** Any Licensor's attachment that has not been transferred from Licensee's pole after 30 days using NJUNS as the written notice.

**q.**  **Written Notification:** Whenever written notification is required under this agreement, unless otherwise specified "written notification" will also mean "notice", "written notice", "or notification"

**Article 2 - Scope of Agreement**

This Agreement shall govern all of Licensee's Attachments to Licensor's Facilities. Licensee shall not place, attach, or connect any Attachment to or in any manner use Licensor's Facilities without the expressed, prior written consent of Licensor, which consent Licensor may grant or deny in its sole discretion.

### Article 3 - Access

**a.** Licensor grants to Licensee the right to attach Licensee's Authorized Attachments to and use Licensor's Facilities identified in Exhibit "A" on the terms and conditions stated herein. Licensor does not warrant, either express or implied, the conditions of Licensor's Facilities, or any modifications thereof, to accommodate the Attachment, or their suitability for Licensee's use. Licensee shall inspect Licensor's Facilities to assure Licensee that the Facilities are suitable for the Attachments; and if the Attachments are made, Licensee accepts those Facilities "as is." Licensor may, in its sole discretion, inspect Licensee's Attachments and construction activities for compliance with the provisions of this Agreement; provided, however, any such inspection shall not relieve Licensee of its obligations hereunder.

**b.** Licensor does not by this Agreement agree to provide any utility services including electricity. Licensee will make separate and independent arrangements for all utility services.

**c.** The rights granted herein are limited to the use of Licensor's Facilities for authorized Attachments. Licensee shall secure at its sole expense any and all other required authorizations, permits and rights to place, construct, maintain and operate its Attachments on Licensor's Facilities, including where required, agreements from the property owners on whose land Licensor's Facilities are located. Licensee shall also be solely responsible for securing in advance all necessary or appropriate approvals, consents, permits, permission, certificates or other authority from any governmental authorities. Licensee shall upon request provide Licensor with copies of any and all authorizations, certifications, consents, permissions, permits, leases, or approvals required under this section. Licensee shall defend, indemnify and hold Licensor harmless from and against any and all claims, demands, losses, damages, and expense, including attorneys' fees (with Licensor retaining the right to choose its counsel), as provided for in Article14, as a result of, arising out of, or relating to Licensee's obtaining or not obtaining any such approval, consent, permits, permission, certificate or other authority.

**d.** Licensee and Licensor shall during the term of this Agreement at all times observe and comply with all applicable laws, ordinances, rules, and regulations. Licensee will also undertake any environmental assessments required by law.

**e.** The primary use of Licensor's Facilities is for the provision of electric utility service to Licensor's customers and for the needs of Joint User. (i) Licensor may reserve space on its own facilities if such reservation is consistent with a bona fide development plan that reasonably projects a

6

need for that space for the provision of its electric utility service. Licensor may permit Licensee to use the reserved space until the Licensor or Joint User has an actual need for that space. When Licensor reclaims the space, Licensee shall promptly remove its Attachments from the space or Licensee shall pay Licensor in accordance with Article 7 the cost of any modifications of Licensor's Facilities needed in order to continue to maintain Licensee's Attachment on Licensor's Facilities. (ii) In the event Licensee's attachments interfere with Licensor's provision of electric service, Licensee agrees to remove its Attachments at Licensee's expense. Licensee shall not permit or suffer the installation and existence of any other improvement (including, without limitation, transmission or reception devices) upon the Licensee's Attachments to Licensor's Facilities or premises if such improvements materially interfere with Licensor's use of the Facility in any manner whatsoever.

f.   Attached to Licensor's poles are energized electrical conductors and equipment that can pose a potential hazard. Licensee shall ensure that its employees and contractors are aware of the hazards involved in, and are trained for, working near Licensor's electrical conductors and facilities.

**Article 4 - Application Requirements**
**a.**   Before Licensee shall attach to or use any of Licensor's Facilities, Licensee shall make application and receive a permit therefore. The application shall be in the form provided in Exhibit "A". Such application shall include a sketch of pole locations showing the exact route of the proposed Attachments, with a detailed count of the number of poles to which Licensee proposes to attach and specifications as to how Attachments will be made, including attachment heights and guying. The application shall also include the specifications for the cable/fiber (weight, diameter, etc.) or other Attachments proposed to be made to Licensor's Facilities. Upon Licensor's approval and issuing a permit, Licensee may make the Authorized Attachments thereby covered, subject to the terms and conditions of this Agreement. Licensor reserves the right to determine whether or not to issue a permit. In reviewing an application, Licensor may consider issues of capacity, safety, reliability, generally applicable engineering requirements, the operation of Licensor's distribution and/or transmission systems, Licensor's contractual obligations to any other entities which may be entitled to use of Licensor's Facilities, and Licensor's reasonably anticipated future needs for the Facilities. Licensee shall also make application on the form provided in Exhibit "A" and receive a permit before Overlashing, Rearranging Attachments, or Changing the Character of Service. Licensor shall state the reasons for any denial in writing upon request of Licensee.

**b.** For drop pole attachments, the Licensor may make attachments to Licensee's pole and submit a permit (Exhibit "A") on a quarterly basis. The Licensee will attach a list of all of the drop pole locations where a drop pole attachment has been made during the previous quarter. The Licensor will inspect the quarterly drop pole permit and contact the Licensee if there are any pole attachment violations.

**c.** Licensor shall review the application and determine whether Licensor's Facilities will accommodate the requested Attachments or whether Licensor's Facilities must be modified or replaced prior to making attachments. If Licensor's Facilities will accommodate the requested Attachments, Licensor will issue the permit and return it to Licensee indicating Licensor's acceptance. If Licensor's Facilities, or any part thereof, will not accommodate the requested Attachments, Licensor shall so notify Licensee in accordance with, and Licensor and Licensee shall proceed as provided in Article 7.

**d.** If Licensee makes any unauthorized Attachments, Licensee is deemed in default of this entire Agreement, in which event Licensor may terminate this Agreement in the manner provided in Article 20, require Licensee to remove the Unauthorized Attachment, and/or remove the Unauthorized Attachment itself at Licensee's expense.

**Article 5 - Placing, Transferring or Rearranging Attachments**
**a.** Licensee's Attachments, in each and every location, shall be installed, operated, and maintained according to and in compliance with all applicable requirements of the NESC, OSHA and other rules, regulations, and orders now in effect or that may hereafter be issued by any authority having jurisdiction and in a manner so as to not interfere or hamper Licensor's, Joint User's, or any other Licensee's use of the Facilities. Licensee's Attachments shall be made only to those of Licensor's Facilities and within such space on Licensor's Facilities as Licensor shall designate.  Licensee shall, at its sole expense and to the satisfaction of the Licensor, install and maintain guys and anchors to sustain any unbalanced loads caused by Licensee's Attachments and shall install and maintain any electrical ground and other protective equipment that may be required as a result of Licensee's Attachments.  Licensee shall be responsible for keeping its facilities clear of obstructions and vegetation. Licensee shall comply with the Attachment requirements as shown in Exhibits "C" when placing, transferring or rearranging Attachments.  The drawings in Exhibits "C" shall serve as construction guides for Licensee, and such drawings may be superseded, amended, or added to from time to time as may be required by Licensor.  At any time Licensor updates

Exhibit C, the updates will be provided to Licensee within a reasonable amount of time.

**b.** Licensor shall have the right to require Licensee to Rearrange Attachments or Transfer Attachments, in which event Licensee shall promptly make such changes at Licensee's expense; or at its option, Licensor shall have the right to Rearrange Attachments; or

Transfer Attachments at Licensee's expense. Licensor reserves the right reasonably to refuse or revoke any permit for any Attachment to Licensor's Facilities when Licensor determines, in its sole judgment, that such Facilities are required for Licensor's or Joint User's use and that the Facilities will not accommodate and may not reasonably be rearranged or replaced to accommodate the Attachment.

**c.** Licensee shall not tamper with, interfere with, remove or relocate Licensor's Facilities or any other attachments or facilities thereon.

**d.** If Licensor is required or is requested by Licensee to install grounds or make connections to Licensor's system neutral, Licensee shall pay Licensor for the cost of installing such grounds or making such connections as provided in Exhibit "D" as the grounding/bonding fee.

**e.** Licensor reserves the right to inspect periodically each Attachment of Licensee on or in the vicinity of Licensor's Facilities as conditions may warrant. Licensor shall provide Licensee at least sixty (60) days prior written notice of such periodic inspection. Licensee, at Licensee's option, may accompany Licensor on such periodic inspection. Licensee shall reimburse Licensor for the expense of such inspections. Licensor shall give Licensee notice of such inspection unless, in Licensor's judgment, such inspections are required for reasons involving safety, operations, or because of a potential violation of the terms of this Agreement by Licensee. The making of such inspections or the failure to do so shall not relieve Licensee of any responsibility, obligation or liability under this Agreement nor shall it serve to increase Licensor's responsibility, obligation or liability under this Agreement.

**f.** Licensee shall ensure that all of its employees and contractors comply with and make all notifications required by the Mississippi One-Call Act (Miss. Code Ann. § 77-13-1, *et seq.*) and of the Mississippi High Voltage Line Act (Miss. Code Ann. § 45-15-1, *et seq.*) when conducting any and all work on or in the vicinity of Licensor's Facilities.

**g.** Licensee shall be a member of the National Joint Utilities Notification System (NJUNS); and all notifications of transfers and rearrangements shall be made through NJUNS.

9

## Article 6 - Abandonment and Removal of Facilities

**a.** If Licensor desires at any time to abandon or eliminate any of Licensor's Facilities to which Licensee's Attachments are attached, Licensor will attempt to give Licensee at least sixty (60) calendar day's prior written notice thereof. If Licensee's Attachments are not removed by the date specified in the notice, Licensor shall have the right to remove Licensee's Attachments from the poles at Licensee's expense. In the event Licensor removes Licensee's Attachments, Licensor will notify Licensee of where the Attachments are stored. Licensee shall defend, indemnify and hold Licensor harmless from and against all obligations, liabilities, claims, damages, costs, expenses or charges, including attorney's fees, arising out of, resulting from, or in any manner connected with Licensor's removal of Licensee's attachments or Licensee's use of the poles after Licensor's abandonment of them.

**b.** Many of Licensor's Facilities are located on public rights-of-way and are subject to being required to be moved or removed. Should Licensor's Facilities be condemned or be required to be moved, removed or replaced by a public entity or the owner of the property on which Licensor's Facilities are located, Licensor shall give written notice of such fact to Licensee and shall state the date on which Licensor's Facilities shall be moved or removed. Licensee shall at its expense cooperate with Licensor and either remove or Transfer its Attachments by the date stated. In the event that the Attachments are transferred to other facilities, the Attachments to the new facilities will be treated as a new Attachment under this Agreement. If Licensee does not remove or Transfer its Attachments by the date stated, Licensor shall have the right, but not the obligation, to Transfer the Attachments, in which event Licensee shall pay Licensor's full cost of moving the Attachments; or Licensor shall have the right to abandon Facilities to which Licensee is attached. In the event Licensor's Facilities are abandoned, Licensee shall be responsible therefore after abandonment.

**c.** Licensee shall not be entitled to reimbursement of any amounts paid to Licensor by any governmental entity or other user of Licensor's Facilities.

10

**Article 7 - Modifications and/or Replacement of Facilities**

**a.** In the event that any of Licensor's Facilities are inadequate to support or accommodate a new Attachment or the modification of an existing Attachment and in the event Licensor decides in its sole discretion to accommodate the new Attachment or modification, Licensor will notify Licensee of the changes necessary to support or accommodate the Attachment, together with the estimated cost thereof. Licensee shall pay in advance to Licensor the estimated cost of making all such changes, including without limitation Licensor's engineering and administrative costs. If the actual costs of making the changes exceed the estimate, Licensee shall promptly reimburse Licensor the additional costs over the estimate. Licensee shall also pay in advance to the owner or owners of other facilities attached to Licensor's Facilities any expense actually incurred by them for rearranging or transferring their facilities. Without Licensor's prior written permission, Licensee shall not make any Attachments until the required changes have been made.

**b.** In the event that a request for Attachments is made by Licensee and Licensor performs any engineering, construction, and/or administrative work in connection with the request, Licensee shall reimburse Licensor its costs of such work even if the Attachment is not made.

**Article 8 – Maintenance of Facilities**

**a.** In instances of unplanned or emergency maintenance or repair involving Licensor's Facilities, Licensor may, but is not required to, temporarily or permanently remove, relocate, transfer, or replace Licensee's Attachments. In the event the Attachments are Rearranged or Transferred, Licensee shall pay Licensor the transfer fee in the amount provided in Exhibit "D."

**b.** Licensor's Facilities are used primarily for the purpose of providing electric utility service. In the event of damage to Licensor's Facilities, including, but not limited to, damage caused by accidents, hurricanes, tornadoes and/or ice or wind storms, Licensor's primary responsibility will be to restore service to its electric customers. In the event that Licensee's Attachments are also damaged, Licensor shall have no obligation to repair, replace, transfer, rearrange or reattach Licensee's Attachments. Licensee or its contractor may reattach Licensee's Attachments simultaneously with Licensor's restoration efforts so long as the repairs to Licensee's Attachments do not interfere with Licensor's restoration efforts.

**c.** The parties recognize that Licensor is required from time to time to do maintenance on its Facilities, which may require that Licensee's Attachments be Rearranged or Transferred to new Facilities. In such

event, Licensor shall provide reasonable advanced written notice of such maintenance and Licensee shall promptly Rearrange or Transfer its Attachments in a manner so as to not delay or interfere with Licensor's maintenance. At Licensor's sole option, it may Rearrange or Transfer Licensee's Attachments, in which event licensee shall pay Licensor the applicable fees as provided in Exhibit "D."

**Article 9 – Allocation of Costs for Rearranging, Transferring or Removing of Facilities**

**a.** Except as otherwise provided in this Agreement, the costs for any Rearranging, Transferring or Removing of Licensee's Attachments shall be allocated between Licensor, Licensee or other entity on the following basis (i) If the Rearrangement, Transfer or Removal of Licensee's Attachment is the result of an additional Attachment or the modification of an existing Attachment sought by an entity other than the Licensor, Joint User or Licensee, Licensee may request reimbursement from the third party requesting the modification, but Licensor shall not be liable to Licensee for any such costs. (ii) If the Rearrangement, Transfer or Removal of Licensee's Attachment is the result of the need to upgrade or reconfigure Licensor's energy distribution/transmission system or Joint User's system, Licensee shall be responsible for its costs and shall make the change within the time reasonably established by Licensor. Licensor will provide Licensee with adequate notice of the need for Rearrangement, Transfer or Removal.

**b.** Where Licensor Rearranges its Facilities to accommodate Licensee's Attachment, Licensee shall pay all of Licensor's estimated cost in advance. Should Licensor's cost exceed the estimate, Licensee shall promptly pay Licensor the additional amount upon invoice. Licensee shall also pay the cost of Rearranging or Transferring the Attachments of Joint User and all other parties who are attached to the Facility.

**c.** If Licensor Rearranges Attachments or Transfers Licensee's Attachments, Licensee shall pay Licensor a fee for each such attachment as provided in Exhibit "D." Licensor, however, reserves the right to require Transfers and Rearrangements to be made by Licensee, in which event, Licensee shall make such Transfers or Rearrangements within the time specified in the notice. In the event Licensee fails to make a Transfer or Rearrangement of its Attachment within the time specified in the notice, Licensee shall pay Licensor an overdue transfer fee in the amount specified in Exhibit "D" for each overdue attachment to cover Licensor's additional cost associated with monitoring and handling the Overdue Transfer or Rearrangement.

**Article 10 – Special Projects and changes in Character of Service**
Installations other than those covered specifically by this Agreement and
any Change in Character of Service from that specified in Licensee's
application shall be considered special projects and must be submitted to
Licensor in writing and shall be subject to separate negotiations and
agreement.  No such project shall be undertaken without the prior written
consent of Licensor.

**Article 11- Termination of Permits**
**a.**   Upon written notice from Licensor to Licensee that the use of any
Facility is no longer available for occupancy pursuant to this Agreement,
the permit covering the use of such Facility shall immediately terminate
and Licensee shall remove its Attachments at Licensee's expense within
sixty (60) calendar days. Upon receipt of written notice, Licensee shall
have thirty (30) calendar days to propose alternative arrangements for its
Attachment.  Upon agreement of the Licensee and Licensor, such
Attachment may be moved to the alternative location as an Authorized
Attachment.  If, after notice to remove is given, Licensee fails to remove its
Attachments within sixty (60) calendar days, Licensor may remove the
Attachments.  Licensor shall have no liability to Licensee for any losses or
damages that Licensee or Licensee's users may claim as a result of the
removal.  Licensor's costs associated with removal shall be promptly paid
by Licensee upon invoice.

**b.**   Licensee may at any time remove any of its Attachments from any
of Licensor's Facilities, in which event, Licensee shall give Licensor notice
thereof in the form provided in Exhibit "B."  No refund of any rental or other
fees or costs incurred will be paid on account of notice and removal.  If
Licensee surrenders its permit pursuant to the provisions of this Article,
but fails to remove Licensee's Attachments from Licensor's Facilities
within sixty (60) days thereafter, Licensor shall have the right to remove
Licensee's Attachments at Licensee's expense and without any liability on
the part of Licensor for loss, damage, or injury to Licensee's Attachments;
and Licensee shall defend, indemnify and hold Licensor harmless for
claims and demands of third parties arising out of, resulting from, or in
connection with such removal in accordance with Article 14.  If Licensee's
Attachments are removed by Licensor as provided by this Article, Licensor
may dispose of such Attachments at its discretion without the permission
of and with no obligation to Licensee.  In the event that Licensee's
Attachments shall be removed from any Facility as provided by this Article,
no other Attachment shall again be made to such Facility unless Licensee

shall have first complied with all of the provisions of this Agreement as though no such Attachment had previously been made.

### Article 12 - Rental Payments and Payments of Other Charges

**a.**   Licensee shall pay to Licensor rental fees for each Attachment made to Licensor's Facility pursuant to this Agreement as provided in Exhibit "D."  Said rental fees shall be payable annually, in advance, on the thirty-first (31st) day of December.  The annual rental fee shall be based on the number of Attachments being maintained on the first day of December. For the purpose of computing these rental payments, each outstanding permit shall be construed as if the Attachment had been made on the date it was approved by the Licensor even though the Attachment has not been actually made on such date.  The first payment of rental for each Attachment shall be based on the annual rental amount prorated from the day the permit to attach is granted.

**b.**   No refund of any Attachment fee will be paid on account of any termination or surrender of a permit.

**c.**   An actual inventory and inspection of the Licensee's attachments shall be made on a periodic basis. Licensor shall provide at least sixty (60) days prior written notice of such inventory and inspection to Licensee and Licensee shall have the right, in its sole discretion, to accompany Licensor on the inventory and inspection.  The cost of the inventory and inspection shall be borne by Licensee.  If it is found that that Licensee has made any Unauthorized Attachments, Licensee shall pay rental fees for each Unauthorized Attachment for a period of five years or from the date of the last inventory, whichever is shortest, plus interest at the rate specified in Section 12(d), and all other charges otherwise applicable under this Agreement.  In addition to back rent, plus interest, Licensee shall pay to Licensor a fee of $25.00 for each Unauthorized Attachment in excess of 2% of the last reported total preceding the inventory.

**d.**   Bills for expenses and other charges under this Agreement, except those advance payments specifically covered herein, shall be payable within thirty (30) days after presentation.  Late charges at the rate of one and one-half percent (1 ½%) per month shall accrue and be applied to all outstanding bills not paid within thirty (30) days after receipt thereof, and Licensor shall be entitled to its reasonable costs, including attorney's fees, in connection with the collection of any outstanding bills, regardless of whether suit is actually filed.

**e.** Nonpayment of any such bill by Licensee shall constitute default of this Agreement.

**f.** Licensee shall, consistent with 47 CFR 1.1403(e), immediately notify Licensor upon offering telecommunications services through any Attachment to Licensor's poles. Any Attachments used to provide telecommunications services will be invoiced at a rate calculated under the Federal Communication Commission's telecom formula.

### Article 13 – Other Fees and Charges
**a.** In addition to the other fees and charges stated or described herein, the following fees and charges shall apply:

   **1.** Licensee shall pay to Licensor an Inspection Fee at the rate provided for in Exhibit "D."

   **2.** The fee to reserve space on a Facility shall be the same as if an Attachment were made.

**b.** Wherever this Agreement provides for Licensee to pay for work done by Licensor, the charge for such work shall include all actual, reasonable, cost-based material, labor, engineering and administrative costs and applicable overheads in accordance with public utility accounting practices.

**c.** Licensor shall have the right each calendar year, on at least sixty (60) days prior written notice, to increase or decrease the rental fees and other charges set forth in the Agreement and Exhibit "D."

### Article 14 – Liability and Damages
**a.** Licensor reserves to itself, its successors and assigns, the right in its sole discretion to maintain and to operate its Facilities in such manner as will best enable it to fulfill its own service requirements. Licensor shall not be liable to Licensee for any damage to Licensee's Attachments, interruption of service of Licensee or for interference with the operation of facilities of Licensee arising out of the use, operation or maintenance of Licensor's facilities. Additionally, Licensor shall not be liable to Licensee for any interruption of service of Licensee or for any interference with the operation of facilities of Licensee arising out of a cause outside the control of Licensor.

**b.**  Licensee shall exercise special precautions to avoid damaging Licensor's Facilities and others occupying Licensor's Facilities; and Licensee hereby assumes all responsibility for the costs of making repairs or replacements of such damage.  Licensee shall make an immediate report to Licensor of the occurrence of any such damage known to Licensee and hereby agrees to reimburse the respective owners for the expense incurred in making repairs.  If Licensee shall fail to exercise precautions to avoid damage or if Licensee shall fail to immediately report the occurrence of such damage, such failure shall constitute default of this Agreement.

**c.**  Licensee shall defend, indemnify, and hold harmless Licensor, and its affiliated and associated companies, shareholders, directors, officers, agents, representatives and employees from and against any and all claims, demands, and suits for loss or damage to property and/or injury to or death of any persons including, but not limited to, employees of Licensee or Licensor and employees of any contractor or subcontractor of Licensee or Licensor performing work for Licensee or Licensor in connection with this Agreement, including payments made under any Workers' Compensation Law, payment for loss of revenue and other consequential damages for Licensor or third parties and any other appropriate compensation arising out of, in connection with, or caused by the erection, maintenance, presence, use or removal of Licensee's cable, equipment and facilities, or by the proximity of the respective cables, wires, apparatus and appliances of the parties' hereto, or by any act, or lack of act, of Licensee on or in the vicinity of Licensor's Facilities or other poles whereon Licensee or Licensor maintains facilities, or Licensee's performance or breach of any part of this Agreement, except for  the negligence or willful misconduct of Licensor.  Licensee shall also defend, indemnify, and hold harmless Licensor and its affiliated and associated companies, shareholders, directors, officers, agents, representatives and employees from any and all claims and demands of whatever kind which arise directly or indirectly from the operation of Licensee's facilities including taxes, special charges by others, claims and demands for damages or loss for infringement of copyright, for libel and slander, for unauthorized use of television broadcast programs, and for unauthorized use of other program material, and from and against all claims and demands for infringement of patents with respect to the manufacture, use and operation in combination with Licensor's poles, anchors or other facilities or otherwise regardless of the negligence of Licensor.  Licensee's indemnity obligations hereunder shall extend to and include all actual costs including overhead costs and/or consequential damages (including the services of Licensor's regular employees and retained attorneys) incident to the investigation and defense of all claims and demands to which Licensee's indemnity obligations apply.  This article shall also apply to such amounts, if any, as Licensor may be subjected to as damages

incident to a finding that facilities of Licensee constitute an additional servitude upon the streets or other public ways of any State, County, or Municipal road or upon property of owners abutting thereon.  In the event Licensee shall have the obligation under this Agreement to defend Licensor, Licensor shall have the right to select counsel who will represent Licensor.

**d.**   Without limiting any obligations or liabilities of Licensee under this Agreement, Licensee shall provide and maintain for the term of this Agreement, at its own expense, without direct reimbursement, insurance coverage in forms and amounts that Licensee believes will adequately protect it but in no case less than:

**1.**   Workers' Compensation insurance in accordance with all applicable state, federal, and maritime laws, including Employer's Liability Insurance in the amount of $1,000,000 per accident.  Policy shall be endorsed to include a waiver of subrogation in favor of the Mississippi Power Company and its affiliated and associated companies.

**2.**   Commercial General Liability Insurance including Contractual Liability Coverage, covering liability assumed under this Agreement, Products/Completed Operations Coverage, Broad Form Property Liability Coverage, and Personal Injury Coverage in the amount of $1,000,000 per occurrence for Bodily Injury and Property Damage.

**3.**   Commercial Automobile Liability Insurance including all owned, hired, leased assigned and non-owned vehicles, with a combined single limit of not less than $1,000,000 per accident.

**4.**   Excess Liability Coverage to provide excess of 14(d) (1) through 14(d) (3) in the amount of $5,000,000 per occurrence.

Licensee's insurance policies required by paragraphs (1) through (4) above, shall include the Licensor and its affiliated and associated companies as additional insured.  All of Licensee's policies of insurance shall be primary insurance and non-contributing with any other insurance, maintained by Licensor, and its affiliated and associated companies. Policies shall provide Licensor with thirty (30) days prior Written Notice of cancellation or any material adverse change in conditions.  Licensee shall provide Licensor with Certificates of Insurance issued to the Licensor evidencing coverage currently in effect upon execution of and for the duration of this Agreement and evidencing Licensor's additional insured status.

Licensee shall be fully responsible for any deductible or self-insured retention amounts contained in its insurance program or for any deficiencies in the amounts of insurance maintained.

Unless agreed otherwise in writing by Licensor, any subcontractor providing services under this Agreement shall be required to carry insurance coverage in a form and amount consistent with the requirements of this Article 14(d) and Certificates of Insurance evidencing such coverage shall be presented to Licensor prior to commencement of services by the subcontractor.

**e.** Licensee shall furnish a bond, in a form reasonably acceptable to Licensor, to guarantee performance of any obligations under this agreement and the payment of any sums which may become due to Licensor under any of the provisions of this Agreement including without limitation annual attachment fees; costs of transfers, inspections, maps, work order preparation/engineering/revision, curing non-compliance with Codes and Laws, removal of Attachments upon termination of this Agreement, periodic field counts, and other reimbursable costs incurred by Licensor. The list of items in the preceding sentence is not intended to be an exclusive list of the sums to be guaranteed by the bond. The list is of examples only, and shall not in any way be interpreted to limit the amounts or types of items included in the coverage of the bond. The bond shall be in the amount as specified in Exhibit E. This bond shall remain in effect throughout the term of this Agreement and thereafter as long as Licensee has Attachments on Licensor's distribution poles. The bond shall not be one that is secured by the assets of Licensee. Licensor reserves the right to require other forms of security, such as a letter of credit or escrow arrangements, where it reasonably deems it necessary to do so to assure payment from Licensee.

**f.** Licensee shall furnish at Licensor's reasonable request, such other insurance not specifically named that it deems appropriate for the conduct of its business, including but not limited to such environmental impairment insurance, in amounts consistent with the other policies named in this article, with Licensor being an additional insured and a certificate of insurance being provided as required under this article.

**Article 15 - Duties, Responsibilities, and Exculpation**
**a.** Licensee does hereby acknowledge and agree that Licensor does not warrant the condition of the premises or its Facilities and Licensee does hereby assume all risk of any damage, injury or loss of any nature whatsoever caused by, arising out of, or in connection with the use of Licensor's Facilities and that it does hereby agree to indemnify, defend, protect, and hold Licensor harmless in accordance with Article 14.

**b.**  By executing this Agreement, Licensee warrants that it has or will fully acquaint itself and its employees and/or contractors with the conditions relating to the work it will undertake under this Agreement, that it fully understands or will acquaint itself with the Facilities, difficulties, and restrictions attending the execution of such work and shall employ or engage only skilled and competent personnel in the performance of installation and maintenance activities under this Agreement.

**c.**  It is further understood and agreed by and between the parties that in the performance of work performed under this Agreement, Licensee, its agents, servants, employees, contractors and subcontractors may be required to work near, about, adjacent to and in the vicinity of electrically energized lines, transformers, or other equipment of Licensor, and it is the intention that electric service will not normally be interrupted except after notice.  Licensee is fully and solely responsible for seeing that its employees, servants, agents, contractors and subcontractors shall have the necessary skill, knowledge, training, and experience to protect themselves, their fellow employees, employees of Licensor, contractors of Licensor, and the general public, from harm or injury while performing work permitted pursuant to this Agreement, and for furnishing said employees, servants, agents, contractors and subcontractors with competent supervision and sufficient and adequate tools and equipment for their work to be performed in a safe manner while Licensor's lines and equipment remain energized.  Licensee agrees that in emergency situations in which it may be necessary to de-energize any part of Licensor's equipment, Licensee will so notify and shall be solely responsible to see that work is suspended until the Facilities have been de-energized and that no such work is conducted unless and until the Facilities are de-energized.

**d.**  In the event Licensor de-energizes any equipment or line at Licensee's request or for Licensee's purposes, benefit or convenience, Licensee shall reimburse Licensor in full for all costs and expenses incurred by Licensor.  In the event that Licensee shall cause an interruption of electric service by damaging or interfering with any equipment or facilities of Licensor, Licensee shall immediately do all things reasonable to avoid injury or damages, direct and incidental, resulting therefore and shall notify Licensor immediately.  Licensee shall be solely responsible for any losses, injuries, damages or claims arising out of such interruption or de-energization of Licensor's electric system, to all persons whomsoever, and does hereby agree to defend, indemnify and hold harmless Licensor therefore in accordance with said Article 14.

### Article 16 - Taxes

**a.** All real property taxes, assessments and other real property charges levied or assessed against Licensor's Facilities shall be paid by Licensor.

**b.** All taxes, assessments, license fees, operating fees, and other charges that are levied or assessed against Licensee's personal or real property installed or located in or on the Licensor's Facilities, any business activities conducted by Licensee in or on Licensor's Facilities, or Licensee on account of any activities of Licensee whatsoever in or on Licensor's Facilities, shall be paid by Licensee.

### Article 17 - Subordination

Licensor may from time to time, grant liens, deeds of trust, mortgages or other security interests covering the Licensor's Facilities herein; and Licensee agrees that its rights under this agreement are subordinate to all such liens, deeds of trust, mortgages, or security interests. Licensee further agrees upon request to execute such documents as may be reasonably requested to evidence such subordination to any subsequent liens, deed of trust, mortgages or other security interests granted by Licensor.

### Article 18 - Rights of Other Parties

Nothing herein contained shall be construed as a grant of any exclusive license, right or privilege to Licensee. Licensor shall have the right to grant, renew and extend rights and privileges to others not parties to this Agreement, by contract or otherwise, to use any Facilities covered by this Agreement, subject to the prior rights, if any, of Licensee to use such Facilities. No payment made pursuant to this Agreement shall create or vest in Licensee or anyone else any ownership interest in any property or facility of Licensor.

### Article 19 – Service of Notices

Wherever in this Agreement notice is provided to be given by either party to the other, such notice shall be in writing and shall be effective when personally delivered to:

**Mississippi Power Company**
**Joint Use Administrator, Distribution Services**
**Operations Center**
**16080 Jim Banks Rd.**
**Gulfport, MS 39503**

, or when mailed by certified mail, return receipt requested, with postage prepaid and properly addressed as follows:

If to Licensor, at:

**Mississippi Power Company**
**Joint Use Administrator, Distribution Services**
**Operations Center**
**Post Office Box 4079**
**Gulfport, Mississippi 39502-4079**

If to Licensee, at:

**Bailey Cable TV, Inc.**
**595 Burnham Rd.**
**Brandon, MS 39042**

or to such other address as either party may, from time to time, give the other party written directions to use for such notice.

**Article 20 - Default/Termination of Agreement**
**a.   If Licensee shall fail to comply with any of the terms or conditions of this Agreement or defaults in any of its obligations under this Agreement and shall fail within sixty (60) days after receipt of written notice from Licensor to correct such default or noncompliance, Licensor may, at its option and in addition to any other remedies at law  immediately terminate this Agreement and all licenses and rights granted hereunder, or the licenses and rights covering the facilities as to which such default or noncompliance shall have occurred; provided, however, that where the nature or circumstances surrounding such default cannot reasonably, be cured within said sixty (60) day period, and if Licensee has proceeded promptly to cure same and continues to pursue such cure with all due**

diligence, in Licensor's reasonable opinion, the period for curing such default may be extended for such period of time as may be necessary, in Licensor's reasonable opinion, to complete such curing.

**b.** In addition and subject to subsection (a) above, Licensor shall have the right upon sixty (60) days written notice to terminate this entire Agreement, or individual licenses granted hereunder:

1. If Licensee's Attachments are maintained or used in violation of any law or in aid of any unlawful act or undertaking; or

2. If any permit or other authorization which may be required by any governmental authority, or from any property owner, for the use, operation or maintenance of Licensee's cables, equipment and facilities on Licensor's Facilities is revoked, denied, or not granted; or

3. Change in Uses of Licensor's Facilities not specifically provided for in this Agreement or in Change in Character of Service by Licensee.

**c.** This Agreement shall automatically cease and terminate in the event either party is unable to permanently perform the duties, obligations and responsibilities herein and has been given sixty (60) days written notice that the events provided in this section have occurred due to circumstances beyond the control of the party affected, including but not limited to acts of God, fire, flood, explosion, war, civil unrest, injunction, accident, lockouts and strikes.

### Article 21 – Assignment of Licensee's Rights

**a.** Licensee shall not assign or transfer the privileges contained in this Agreement voluntarily or involuntarily without the prior consent in writing of Licensor, which consent may be withheld in Licensor's sole discretion. The assignment or transfer by Licensee of such privileges without written consent of Licensor shall constitute a default of Licensee's obligations and, notwithstanding any other provisions of this Agreement, Licensor may in such event at its option forthwith terminate this Agreement or any license issued hereunder.

**b.** Subject to the provisions of paragraph (a) hereof, this Agreement shall extend to and bind the successors and assigns of the parties hereto.

### Article 22 – Conveyance or Sale of Facilities

Licensor shall have the right without any consent of Licensee, in whole or in part, to sell, donate, exchange, convey or assign to any third party its right, title or interest in or to the Facilities or the real property on which such Facilities are constructed, and shall thereupon be relieved of any and all future obligations or duties under this Agreement.  Licensor shall provide Licensee with written notice of such action within a reasonable amount of time after such action has been taken.

### Article 23 - Term of Agreement

**a.**  This Agreement shall become effective upon its execution by Licensor and if not terminated in accordance with other provisions of this Agreement, shall continue in effect for an initial term (the "Initial Term") of three (3) years and shall continue thereafter until terminated by either party with at least sixty (60) days written notice.

**b.**  Upon termination of the Agreement, all outstanding licenses shall terminate and shall be surrendered, and Licensee shall immediately begin to remove its Attachments, Licensee shall complete such removal within six (6) months next following the termination date.  Despite any such termination, Licensee shall continue to pay the rental payments and other charges provided herein until all Attachments are removed.  If Licensee does not remove all Attachments within the six (6) month period, Licensor shall have the right to remove Licensee's Attachments at the cost and expense of Licensee and without any liability therefore; and Licensee shall be conclusively presumed to have abandoned all such attachments not so removed by the Licensee, so that Licensor may dispose of the same in such manner as Licensor wishes.

**c.**  Even after the termination of this Agreement, Licensee's responsibility and indemnity obligations shall continue with respect to any claims or demands related to Licensee's Attachments as provided for in Article 14.

### Article 24 – Entire Agreement, Amendments

This Agreement is the entire agreement between the parties and there are no other agreements with respect to the premises.  This Agreement may be amended or changed only in writing and signed by both parties hereto.

### Article 25 - Waiver

Failure to enforce or insist upon compliance with any of the terms or conditions of this Agreement shall not constitute a general waiver or

relinquishment of any such terms, conditions or rights but the same shall be and remain at all times in full force and effect.

The waiver by Licensor or Licensee of the breach of any term, condition, or provision of this agreement shall not be deemed a waiver of such term, condition, or provision or any subsequent breach of the same or any other term, condition or provision of this Agreement. The subsequent acceptance of annual rental hereunder by Licensor shall not be deemed to be a waiver of any preceding breach by Licensee of any term, condition, or provision of this Agreement regardless of Licensor's knowledge of such preceding breach at the time of acceptance of such rental. No term, condition, or provision of this Agreement shall be deemed to have been waived by Licensor or Licensee, unless such waiver is in writing by Licensor or Licensee.

### Article 26 - Confidentiality
Licensee, its agents, officers and employees shall maintain as confidential the terms and conditions of this Agreement.

### Article 27 - Environmental
Each party will be fully and solely responsible for environmental contamination caused by its facilities, attachments, contractors, agents or employees and the parties will undertake such environmental assessments required by law. Should contamination occur or should any violation of any environmental statute or regulation occur as a result of the action or inaction of either party, its officers, employees, agents or contractors, the non-prevailing party shall defend, indemnify, and save harmless the prevailing party, and its affiliated and associated companies, shareholders, directors, officers, agents, representatives and employees from and against any and all claims and demands for damages to property and injury to or death of any persons arising out of such contamination or violation, including but not limited to any costs associated with any environmental assessments required on any property owned or controlled by the prevailing party. Any such environmental assessments shall be conducted so as to minimize the effect on the operations of both parties.

### Article 28 - Signs
Licensee shall not have the right to place, construct or maintain signs on the Licensor's Facilities or any underlying property without the prior written

consent of Licensor. However, Licensee is required to identify its Attachments by Tagging.

### Article 29 - Partial Invalidity

In the event any term, covenant or condition of this Agreement, or the application thereof, to any person or circumstance shall be deemed to be invalid or unenforceable, the remainder of this Agreement or the application of such term, condition or provision to persons or circumstances, other than those as to which it is held unenforceable, shall not be affected thereby and each term, condition or provision of this Agreement shall be valid and enforced to the fullest extent permitted by law.

### Article 30 – Governing Laws

The interpretation of the provisions of this Agreement and of the rights of the parties hereto shall be governed by the laws of the State of Mississippi with venue being in the First Judicial District of Harrison County, Mississippi.

### Article 31 - Jurisdiction

Licensee acknowledges that Licensor and other utility companies have taken and/or may take the position that the 1970 Act and the 1996 Act, or regulations promulgated with respect thereto, are unconstitutional on their face or as applied or are otherwise defective as a matter of law. In the event the 1970 Act the 1996 Act or regulations promulgated with respect thereto are held by a court or administrative agency of competent jurisdiction to be unconstitutional or otherwise defective in whole or in part, and such decision becomes final or is otherwise upheld, Licensor and Licensee agree to renegotiate, in good faith, the terms and conditions of this Agreement. If, following a period of ninety (90) days such re-negotiation is unsuccessful, Licensor, in its sole discretion, may terminate this Agreement without liability or further obligation upon giving one hundred twenty (120) days written notice, in which event Licensee promptly shall remove or cause to be removed any and all of its attachments and equipment from Licensor's poles, ducts, conduits, or rights-of-way.

**In Witness Whereof,** the parties hereto have caused these presents to be executed in duplicate on the day and year first above written, each party hereto retaining an executed copy hereof.

Licensor: Mississippi Power Co.

By: _____

Title: _____MANAGER    DISTRIBUTION_____

Witness: _____

Licensee: Bailey Cable TV, Inc.

By: _____David A. Bailey_____

Title: _____President_____

Witness: _____Jo Ann Bailey_____

26

## EXHIBIT A

### Application and Permit for Attachment to Mississippi Power Company's Facilities

**To Be Completed By Licensee:**
In accordance with the terms of Agreement dated _____, application is hereby

made for attachments to provide CATV _____, Telecommunications _____,

Other _____ services for a total _____ (number) of new attachments.

Name of Licensee _____

Contact Name _____ Telephone No. _____

Proposed Attachment to MPC facilities will be located in:

County _____ City/Town_____

Address _____

**Note:  Please attach a sketch of pole locations.**

By _____       Title _____
    **(Licensee)**

Date _____

**To Be Completed By Mississippi Power Company:**

Permit No._____       MPC Contact _____
Previous Total Poles _____
Added by This Permit _____       Telephone No._____
New Total Poles _____
                                             **MISSISSIPPI POWER COMPANY**

Inspection Fee    $_____       By _____

Estimated Make-Ready Cost $_____       Title _____

**The above changes approved and advance payment enclosed.**

By_____
    **(Licensee)**

**Title** _____

**Date** _____

**EXHIBIT B**

**Notification of Removal of Attachments from Mississippi Power Company's Facilities**

**To Be Completed By Licensee:**

Date_____

In accordance with terms of Agreement dated _____, please cancel from your records the following poles covered by Permit No. _____ from which _____ (number) attachments were removed:

Name of Licensee_____, Telephone No._____

County _____

City/Town_____

Address_____

**Note:  Please attach a sketch of pole locations.**

By   _____
       **(Licensee)**

Title   _____

**To Be Completed By Mississippi Power Company:**

Previous Total Poles_____

Removed by this Notice_____

New Total Poles_____

**MISSISSIPPI POWER COMPANY**

By   _____

Title   _____

**Notification of removal acknowledged**

Date: _____

28

**EXHIBIT C-1**



| | DISTRIBUTION SPECIFICATIONS | c |
|---|---|---|
| **Mississippi Power** *the southern electric system* | SUBJECT FOREIGN ENTITY—COMMUNICATIONS CABLE | |
| | DETAIL SEPARATION OF PARALLEL CABLES | |
| Date 3/1/99 | Plate C-1.40 | File DS-C140 |

**EXHIBIT C-2**



NOTE:  LIGHT FIXTURE SHOWN IS SYMBOLIC ONLY.
CLEARANCES SHOWN ARE APPLICABLE
TO ANY TYPE FIXTURE USED.

MPC SUPPLY CABLE

INSULATING JACKET
CONDUIT OR MOLDING

20" MINIMUM

12" MIN.

MESSENGER
STRAND SHALL
BE BONDED TO
THE POLE
GROUND IF
PRESENT.

COMMUNICATION CABLE

| Mississippi Power | DISTRIBUTION SPECIFICATIONS | | c |
|---|---|---|---|
| *the southern electric system* | SUBJECT JOINT USE — CATV, TELEPHONE, OTHER | | |
| | DETAIL SEPARATION FROM LUMINAIRES | | |
| Date 3/1/99 | Plate C-2 | File DS-C2 | |

**EXHIBIT C-3**



**EXHIBIT C-4**



| | NO. | DATE | BY | REVISION | MISSISSIPPI POWER COMPANY | |
|---|---|---|---|---|---|---|
| DR. | | | | | | |
| CK. LEW | | | | | SUBJECT: JOINT USE — CATV AND TELEPHONE | |
| APP. LEW | | | | | DETAIL : SERVICE DROPS | |
| DATE 7-10-91 | PLATE NO. C-4 | | | | CAD FILE NO. JUCTSD | A— |

## EXHIBIT D

**(Fees are current as of 10-24-12. They are subject to change)**

**Inspection Fee:**                                                    **Actual Costs**

**Grounding/Bonding Fee:**                                      **Actual Costs**

**Transfer Fee:**                                                       **Actual Costs**

**Overdue Transfer Fee:**                                        **Actual Costs**

**Pole Rental Fee:**                                                  **$8.04/Attachment/Year**

## EXHIBIT E

## BOND SCHEDULE

| Number of Attachments | | Rate | Cumulative Coverage Amount |
|---|---|---|---|
| From | To | | Up to |
| 1 | 3,000 | $25/Attachment | $75,000 |
| 3,001 | 6,000 | $20/Attachment | $120,000 |
| 6,001 | 25,000 | $15/Attachment | $375,000 |
| 25,001 | 100,000 | $ 10/Attachment | $1,000,000 |

The minimum amount of coverage is $37,500.

For the purpose of determining the amount of coverage required, the number of Attachments shall be the total number for which annual attachment fees were billed at the beginning of the current Contract Year.   Maximum coverage is $1,000,000.